IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MITCHELL SMITH,**

      **Plaintiff,**

v. // CIVIL ACTION NO. 1:13CV266
                            (Judge Keeley)

**METSO PAPER USA, INC., a foreign
corporation doing business as Metso
Power, also known as VALMET, INC.,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS [DKT. NO. 15]**

Pending before the Court is the motion to dismiss (dkt. no. 15), filed by the defendant, Metso Paper USA, Inc. ("Metso"),[1] pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court **DENIES** the motion.

**I.**

On January 10, 2014, the plaintiff, Mitchell Smith ("Smith"), filed an amended complaint against Metso, which operates a facility in Fairmont, West Virginia, where it fabricates and stores pressed metal barriers. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Metso receives sheet metal shipped to it on wooden pallets measuring 120" in length and 48" in width. The sheet metal is then pressed into barriers, measuring approximately 120" in length and

---

[1] Effective January 1, 2014, the name of the defendant changed from Metso to Valmet, Inc. (Dkt. No. 11). The Court uses "Metso" for purposes of this memorandum opinion and order.

24" in width, which are placed back on the wooden pallets for storage. The loaded pallets then are stacked on 4"x4" wooden beams that are approximately 48" long. The stacked pallets and the beams are then placed on waist-high, homemade, 4'x4' metal work tables. Notably, Metso never tested the suitability of the pallets for storage purposes.

In October, 2011, Smith's job placement agency, United Talent, LLC, placed him on a temporary work assignment at Metso's Fairmont facility. Without providing Smith with safety training regarding the fabrication and storage of the metal barriers, Metso immediately put him to work in that capacity. On December 13, 2011, Smith was assisting a co-worker when a pallet, loaded with over one ton of pressed barriers, fell off the stack and crushed Smith's leg. As a result, Smith suffered severe and permanent injuries for which he has undergone various medical procedures, examinations, and physical therapy. He alleges that, in causing his injuries, Metso acted with "deliberate intent," and thus violated W. Va. Code § 23-4-2(d)(2)(ii).

On January 24, 2014, Metso filed a motion to dismiss Smith's amended complaint for failure to state a claim upon which relief can be granted. Specifically, it argued that Smith "fail[ed] to set forth factual allegations which would show any plausible claim

that [Metso] acted with actual, specific intent necessary to support a claim" under the statute. (Dkt. No. 15). In response, Smith asserted that he had "met [his] burden in pleading a plausible and factually supported claim." (Dkt. No. 21). Metso's motion is fully briefed and ripe for review.

## II.

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

### III.

The West Virginia Workers' Compensation Act generally provides broad immunity to qualifying employers against employees' tort actions. See § 23-2-6. However, the "deliberate intention" statute carves out an exception to that immunity and allows an employee to recover damages from an employer in a deliberate intent case by proving the following five elements:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and

working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

§ 23-4-2(d)(2)(ii)(A)-(E).

The issue here is whether Smith has pled sufficient facts to satisfy the five prima facie elements of his deliberate intent claim. See Syl. Pt. 2, Helmick v. Potomac Edison Co., 406 S.E.2d 700, 702 (W. Va. 1991) ("To establish 'deliberate intention' in an action under [W. Va. Code § 23-4-2(d)(2)(ii)], a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements.").

**A. Specific Unsafe Working Condition**

Metso first contends that Smith's allegations regarding an alleged unsafe working condition lack the requisite specificity. Contrary to Metso's argument, however, Smith describes in detail the barriers stacked upon the pallets stacked upon the beams

5

stacked upon the table. He also alleges that Metso failed to provide adequate safety training, and did not test the suitability of the re-purposed pallets. The specificity contemplated by the statute does not require Smith to point to a single item of the several described as <u>the</u> unsafe working condition. See <u>Skaggs v. Kroger Co./Kroger LP I</u>, 788 F. Supp. 2d 501, 505-06 (S.D.W. Va. 2011) (rejecting a similar argument and finding that the plaintiff's allegations of "several unsafe working conditions," including failure to train, satisfied element (A)'s specificity requirement). Rather, Smith's amended complaint satisfies this element by specifically describing multiple conditions at Metso's Fairmont facility that culminated in an untested tower of wood and metal tottering over an untrained worker. The strong probability of serious injury resulting from this alleged hazard speaks for itself.

**B. Actual Knowledge**

Next, Metso argues that, other than in boilerplate or conclusory allegations that are not properly accepted for purposes of a Rule 12(b)(6) motion, Smith's amended complaint "fails to allege . . . that [Metso] had actual knowledge of a predicate condition, actual knowledge that the condition presented a high degree of risk and actual knowledge of the strong probability of

6

serious injury." (Dkt. No. 22 at 3). In support, Metso cites a number of cases examining the actual knowledge requirement; but all are in the context of summary judgment or a jury verdict. See Smith v. Apex Pipeline Svcs., Inc., 741 S.E.2d 845 (W. Va. 2013); Ryan v. Clonch Indus., Inc., 639 S.E.2d 756 (W. Va. 2006); Nutter v. Owens-Illinois, Inc., 550 S.E.2d 398 (W. Va. 2001); Mumaw v. U.S. Silica Co., 511 S.E.2d 117 (W. Va. 1998); Blevins v. Beckley Magnetite, Inc., 408 S.E.2d 385 (W. Va. 1991). Significantly, Metso cites no cases examining whether a plaintiff has sufficiently pled actual knowledge at the pleading stage.

As Metso correctly observes, the substantive requirements for actual knowledge are set forth in state law. Federal cases, on the other hand, provide guidance as to whether a plaintiff has met his burden under the Twombly/Iqbal pleading standards. The several cases to examine the issue of whether actual knowledge under § 23-4-2(d)(2)(ii)(B) was sufficiently pled have answered universally in the affirmative. See Williams v. Schauenburg Flexadux Corp., No. 1:11CV60, 2011 WL 6748999, *3 (N.D.W. Va., Dec. 23, 2011); Mills v. Aetna Bldg. Maint., Inc., No. 2:09CV0910, 2009 WL 3063450, *2 (S.D.W. Va., Sept. 17, 2009); and Kirkhart v. PPG Indus., Inc., No. 5:06CV21, 2006 WL 3692643, *5 (N.D.W. Va., Dec. 12, 2006).

In Kirkhart, the plaintiffs withstood the defendant's motion to dismiss by pleading that the defendant "violated federal and state safety regulations when it modified the Kalamazoo, which was manufactured as a burden carrier, to be used as a passenger carrier for its employees." 2006 WL 3692643 at *5. Judge Stamp held that, "[b]ecause [the defendant] made these modifications itself, it cannot be said to a certainty that [the defendant] had no actual knowledge of any potential danger posed by using a burden carrier to transport people." Id. In Mills, Judge Copenhaver summarily determined that "it is apparent from the complaint, as well as from plaintiffs' opposition to Aetna's motion to dismiss, that actual knowledge of the unsafe condition is thereby alleged." 2009 WL 3063450 at *2. Finally, in Williams, the plaintiffs alleged that the defendant "manufactured the machine and thus was aware of its allegedly unsafe design and other defects," and that one of the plaintiffs had advised the defendant that his training was inadequate. 2011 WL 6748999 at *3. Id. This Court held that, "[f]rom a pleading perspective, both of these allegations satisfy the 'actual knowledge' requirement of § 23-4-2(d)(2)(ii)(B)." Id.

Here, Smith's allegations regarding Metso's actual knowledge are no less adequate than those in any of the three cases discussed above. According to Smith's amended complaint, Metso failed to

provide him with safety training, and failed to test the suitability of the pallets for storage purposes. Moreover, Smith alleges that the stacking of the materials was done "according to the policies and procedures created and/or ratified by Defendant Metso." (Dkt. No. 8 at 4). Critically, Smith also asserts that Metso's conduct violated federal regulations and industry standards. Taken together, these allegations satisfy the pleading requirement that Metso actually knew of the high degree of risk and the strong probability of serious injury posed by an untrained worker storing metal barriers in the manner described.

**C. Violation of Statute, Rule, Regulation, or Standard**

As to the third element, Metso contends that Smith's allegations regarding Metso's violations of federal safety regulations and industry standards are too vague. In his amended complaint, however, Smith alleges that Metso violated 29 C.F.R. § 1910.176(b) and "commonly accepted and well-known safety standards within the industry." (Dkt. No. 8 at 5). Because Smith cites a specific regulation, vagueness is not the issue with his pleading. Rather, the West Virginia Supreme Court of Appeals focuses on the regulation itself to determine whether it imposes an "affirmative duty" on the employer or, instead, constitutes a mere

9

"general safety requirement." See McComas v. ACF Indus., LLC, 750 S.E.2d 235, 241 (W. Va. 2013) (citing Clonch, 639 S.E.2d at 763).

In McComas, the Supreme Court applied this analysis to Electrical Equipment Maintenance Standard 70B of the American National Standards Institute/National Fire Protection Association, which required the maintenance and periodic inspection of electrical equipment in the workplace. 750 S.E.2d at 239. The trial court had granted summary judgment to the employer on the basis that, "while Standard 70B generally required electrical safety in the workplace, [it] was not a standard specifically applicable to the particular work and working conditions pertaining to McComas." Id. Reversing the trial court's decision, the Supreme Court concluded that Standard 70B did, in fact, impose an affirmative duty on the employer. Id. at 242. Alternatively, it determined that Standard 70E, which provided that "[i]nsulation integrity shall be maintained to support the voltage impressed," satisfied element (C). Id.

Without the benefit of McComas, the United States District Court for the Southern District of West Virginia in 2012 had addressed whether 29 C.F.R. § 1910.134 satisfied element (C) on summary judgment. See Hoschar v. Appalachian Power Co., 906 F. Supp. 2d 560, 570 (S.D.W. Va. 2012). That regulation requires

10

employers to provide respirators to employees when necessary. See 29 C.F.R. § 1910.134(a)(2). The plaintiff, who had contracted a lung disease by inhaling particles of bird droppings at the worksite, did not specifically cite the regulation, but alleged that his employer violated Occupational Health and Safety Act ("OSHA") regulations regarding respiratory protection. See Hoschar, 906 F. Supp. 2d at 570. The district court concluded that 29 C.F.R. § 1910.134(a) did not satisfy element (C) because "[t]he regulation is not specifically applicable to the potential hazard of accumulated bird droppings and histoplasmosis." Id.

Here, Smith alleges the violation of an OSHA regulation that provides as follows: "Secure storage. Storage of material shall not create a hazard. Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse." 29 C.F.R. § 1910.176(b). By use of the word "shall", the regulation imposes an affirmative duty on employers, such as Metso, who store materials in stacked tiers, to do so in a safe and specific manner. Moreover, the instant case is distinguishable from Hoschar because the regulation at issue here is aimed specifically at the tiered stacking of materials. Thus, Smith has sufficiently pled the violation of a federal safety regulation.

11

**D. Intentional Exposure**

Metso does not seriously challenge this element of Smith's deliberate intent claim. The Court has already determined that, when taken as true, Smith's allegations demonstrate Metso's actual knowledge of a specific unsafe working condition and the high degree of risk and strong probability of injury associated with that condition. Moreover, Smith has sufficiently alleged Metso's violation of a federal safety regulation. Thus, element (D) requires Smith to plead that, notwithstanding elements (A)-(C), Metso intentionally exposed him to the unsafe condition. Smith has satisfied this pleading burden by alleging that Metso, knowing he was untrained, directed him to work in the fabrication and storage of the pressed metal barriers. See Tolley v. ACF Indus., Inc., 575 S.E.2d 158, 168 (W. Va. 2002) (explaining that the "intentional exposure" element requires that, "with conscious awareness of the unsafe working condition . . . , an employee was directed to continue working in that same harmful environment").

**E. Compensable Injury as a Proximate Result**

As with the previous element, Metso does not dispute that Smith has sufficiently pled compensable injury as a direct and proximate result of the unsafe working condition. Indeed, Smith's amended complaint identifies several personal injuries, including

"blunt crushing injury with hematoma to his left posterior popliteal fossa," "transection of his left popliteal artery with occlusion," and "left tibial plateau fracture." (Dkt. No. 8 at 7). Moreover, he alleges that these injuries were "a direct and proximate result of Defendant Metso's violation of W. Va. Code § 23-4-2(d)(2)(ii)." Id.

**IV.**

For the reasons discussed, the Court is satisfied that Smith has met his burden of pleading the five elements of his deliberate intent claim at the dismissal stage. Therefore, the Court **DENIES** Metso's motion to dismiss.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this order to counsel or record.

DATED: April 10, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE